## AMES PRIVILEGE ASSOCIATES LIMITED PARTNERSHIP, Plaintiff,

v.

## ALLENDALE MUTUAL INSURANCE COMPANY, Defendant.

### Civ. A. No. 89–0631–F.

United States District Court,
D. Massachusetts.

May 24, 1990.

Francis Dibble Jr., Bulkley, Richardson and Gelinas, Springfield, Mass., for plaintiff.

John N. Love, Robins, Kaplan, Miller & Ciresi, Wellesley, Mass., for defendant.

## MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

### I. INTRODUCTION

This diversity case involves a claim by Ames Privilege Associates Limited Partnership ("plaintiff" or "Ames") for coverage under an insurance policy issued by Allendale Mutual Insurance Company ("defendant"). The defendant issued a Fire and Extended Property Coverage Policy ("the policy") which covered property owned by Ames during the period August 1, 1985 through August 1, 1986. The plaintiff filed suit against the defendant in Hampden County Superior Court, Commonwealth of Massachusetts, on February 17, 1989, two and one half years after the termination of the policy. The defendant is a Rhode Island corporation, and none of the Ames partners are citizens of Rhode Island. In March 1989, the case was removed to this Court on the defendant's motion.

Count I of the plaintiff's complaint asks this Court to issue a declaratory judgment finding the defendant liable to cover losses to Ames' property. Count II alleges a breach of contract by the defendant, and Count III alleges bad faith, and unfair and deceptive acts by the defendant and seeks triple damages pursuant to Mass.Gen.Laws chs. 93A and 176D.

In June 1989 the defendant filed a motion for summary judgment, arguing that the plaintiff's suit was time barred by the policy's language and the applicable two-year limitations period for a standard fire policy as prescribed by the Massachusetts legislature. Mass.Gen.Laws ch. 175, § 99.

On August 31, 1989, United States Magistrate Michael Ponsor issued a Report and Recommendation Regarding Defendant's Motion for Summary Judgment ("Magistrate's Report and Recommendation") which recommended that the defendant's summary judgment motion be granted as to all three counts. The plaintiff filed an

objection to the Magistrate's Report and Recommendation.

On November 30, 1989, this Court adopted the Magistrate's Report and Recommendation that summary judgment be granted as to Counts II and III, finding no basis for the alleged breach of contract or alleged violations of chapters 93A or 175. The Court denied the defendant's summary judgment motion as to Count I, finding that the plaintiff's suit was not time barred. However, the Court reserved judgment on the plaintiff's request for a declaratory judgment regarding Count I, pending further evidence, thus reserving decision on whether the policy provided coverage to the plaintiff.

On December 30, 1989, the plaintiff filed a Motion for Partial Reconsideration and Correction of Memorandum and Order Dated November 30, 1989. The plaintiff objected to the Court's dismissal of the alleged breach of contract and chapters 93A and 175 violations contained in Counts II and III.

On January 16, 1990, the defendant filed a Motion for Reconsideration of Memorandum and Order Dated November 30, 1989 or, in the Alternative, For Leave to File an Interlocutory Appeal. The defendant objected to the Court's denial of its summary judgment motion seeking to dismiss Count I.

The Court will grant the defendant's motion to reconsider, and grant the defendant's original motion for summary judgment as to Count I. Plaintiff's motion for a declaratory judgment regarding Count I as contained in the original complaint will be denied, and plaintiff's motion to reconsider the Court's summary judgment in favor of the defendant regarding Counts II and III will also be denied.

## II. FACTS

The facts of this case were summarized by the Magistrate, and restated by the Court in the Memorandum and Order of November 30, 1989.

Plaintiff owns a 138–unit apartment complex called the Ames Privilege Apartments (the "project") located in Chicopee, Massachusetts. The project was formerly a complex of mill buildings, renovated and rehabilitated in 1984 and 1985. Construction of the project was completed around August of 1985.

The defendant issued insurance for the project for the period covering August 1, 1985 to August 1, 1986. [The policy was cancelled on August 1, 1986, and there is no allegation of insurance coverage by the defendant thereafter.]

Approximately a year and a half following the cancellation of defendant's insurance policy, in February and March of 1988, the plaintiff became aware, through complaints from tenants and visual examination, of abnormal wall cracking and sponginess in floors in one wing of the project. Investigation eventually uncovered significant structural damage to wooden beams and flooring. On June 28, 1988, the plaintiff received an extensive expert's report evaluating the condition of the project and confirming extensive damage. Current estimates of the cost of repairs exceed $2 million and plaintiff has lost approximately $250,000 in gross rental income due to vacancies resulting from the structural problems, so far.

The plaintiff alleges, and for purposes of the Motion for Summary Judgment the defendant does not contest, that the structural damage was taking place, unbeknownst to the plaintiff, during the period August 1, 1985 to August 1, 1986, when the policy was in effect.

By letter dated June 10, 1988 plaintiff notified defendant of the discovery of the structural problems and demanded coverage under the policy. Defendant responded by letter dated June 27, 1988, requesting additional information. In the final paragraph, this letter states:

Neither this letter nor our investigation is an admission or denial of liability and does not waive any rights or duties of either party under the above policy. Anything done or to be done by Allendale [i.e., defendant], or on its behalf, in connection with the above described matter, including but not

limited to, any investigation into the cause or amount of loss or other matter relative thereto, shall not waive, invalidate, forfeit, or modify any of its rights under the policy issued by it.

All correspondence from defendant to plaintiff thereafter contained an identical final paragraph.

Several months of communication, inspection and discussion followed with numerous letters among plaintiff's counsel, defendant's representative and ultimately defendant's counsel. Defendant's adjuster visited the site twice, in August and November 1988, the second time with an expert consultant.

In a letter dated January 10, 1989 counsel for plaintiff noted that he was withholding filing of a suit based upon the request of the defendant that it be permitted to review its expert's report and make a decision without being involved in litigation.

On February 17, 1989, two and one-half years after the cancellation of defendant's insurance policy, this suit was commenced in the Hampden County Superior Court. It was later removed to this court.

Magistrate's Report and Recommendation at 2–4 (citations and footnote omitted).

The dispute before this Court centered on the standard form fire insurance policy adopted by the Massachusetts legislature, which states that:

No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this Commonwealth unless commenced *within two years from the time the loss occurred....*

Mass.Gen.Laws ch. 175, § 99, Twelfth; Massachusetts Standard Policy issued to Ames Mills Associates by Allendale Insurance, lines 154–58 (emphasis supplied). The Court went on to decide that the time when a loss "occurred" under the Massachusetts standard policy could be considered an ambiguity, and that the plaintiff's loss might be covered by the policy under the theory of a "continuing occurrence." *Ames Privilege Associates v. Allendale Mutual Insurance*, C.A. No. 89–0631–F, slip op. at 5–6, 1989 WL 145720 (D.Mass. November 30, 1989).

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) allows summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment will not be granted where there exists a dispute "over facts that might affect the outcome of the suit under the governing law...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 252, 106 S.Ct. at 2512. The Court must examine the record "in a light most favorable to the plaintiff." *Rossy v. Roche Products, Inc.*, 880 F.2d 621, 624 (1st Cir.1989); *Oliver v. Digital Equipment Corporation*, 846 F.2d 103, 108 (1st Cir.1988). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

### IV. DISCUSSION

In construing the language of the policy at issue in this case, the Court adopted a continuing occurrence theory which has been used to extend insurance coverage in cases where the insured was unaware of property damage or physical injury until after expiration of the limitations period for reporting a loss to the insurer. *Ames v. Allendale*, C.A. No. 89–0631–F, slip op. at 6–10 (November 30, 1989). In support of this theory, the Court drew on cases and

public policies which have delayed the running of limitations periods until after plaintiffs have discovered "inherently unknowable" defects in property, or life-threatening "insidious diseases." *Id.* at 10–16. The Court found these cases analogous to the continuing occurrence of fungal rot which damaged the property owned by the plaintiff in the instant case. The Court concluded that the limitations period under the Massachusetts standard policy did not begin to run until 1988, when the plaintiff claims to have discovered the damage, and the case was therefore not time barred.

However, in order to invoke the precedent of Massachusetts and federal cases which have delayed the start of the limitations periods until the time a loss is discovered, this Court found ambiguity in the standard policy's limitations clause regarding "the time the loss occurred" and construed the ambiguity in favor of the insured. The Court should not have done this because the policy language is prescribed by the state legislature. As the defendant has vigorously argued, the Massachusetts Supreme Judicial Court ("SJC") has stated that in construing the language of a standard policy prescribed by the legislature, "the rule of construction resolving ambiguities in a policy against the insurer is inapplicable." *Bilodeau v. Lumberman's Mutual Casualty Co.*, 392 Mass. 537, 541, 467 N.E.2d 137, 140 (1984). In *Pinheiro v. Medical Malpractice Joint Underwriting Association of Massachusetts*, 406 Mass. 288, 547 N.E.2d 49 (1989) (distinguishing cases involving policy language prescribed by the legislature from those where the insurance coverage and rates are established by the state's Commissioner of Insurance), the SJC again stated that ambiguous policy language could not be construed against the insurer when the words of the policy had been statutorily

prescribed. *Id.* at 294 n. 8, 547 N.E.2d at 52 n. 8.

Therefore, the language of the standard insurance policy at issue in this case should have been examined with a view toward "the fair meaning of the language used, as applied to the subject matter." *Bilodeau v. Lumberman's Mutual Casualty Co.*, 392 Mass. at 541, 467 N.E.2d at 140, *quoting Save–Mor Supermarkets, Inc. v. Skelly Detective Serv., Inc.*, 359 Mass. 221, 226, 268 N.E.2d 666 (1971); *Oakes v. Manufacturers' Fire & Marine Insurance Co.*, 131 Mass. 164, 165 (1881). Since the conclusion of the Court's Memorandum and Order of November 30, 1989 was based on an incorrect analysis and the inability of the continuing occurrence theory under Massachusetts law is in doubt, the opinion must be vacated.

Additionally, facts made available to this Court now indicate that the plaintiff's case cannot be considered under the theory of "continuing occurrence." [1] *Accord Prete v. Royal Globe Insurance Co.*, 533 F.Supp. 332, 333, 336 (N.D.W.Va.1982) (limitation period began running when the insured "actually learned *or* by the exercise of reasonable diligence should have learned of the damage to their insured property") (emphasis in original).

Therefore, using the construction of the policy most generous to the plaintiff, the "time the loss occurred" under the policy issued by the defendant would be August 1, 1986, when the policy expired. The limitations period began on that day, and ended on August 1, 1988. Since the plaintiff did not file suit until February 17, 1989 this suit is time barred. *See J. & T. Enterprises v. Liberty Mutual Insurance Co.*, 384 Mass. 586, 428 N.E.2d 131 (1981) (no exception applies to statutory two-year limitations period for mortgagee); *Fluhr v. Allstate Insurance Co.*, 15 Mass.App.Ct. 983, 984, 447 N.E.2d 1254, 1255 (1983) (plaintiff

**1.** *See* this Court's Memorandum and Order in *Ames Privilege Associates Limited Partnership v. Utica Mutual Insurance Co.*, 742 F.Supp. 704 (D.Mass.1990), in which a report commissioned by the plaintiff states that the decay and structural damage were in existence and were visible

before the plaintiff began its renovation project, and that "these conditions were not recognized for the potential damage capabilities [and] replaced." *Id.* at 706, *quoting* Biological and Structural Evaluation of Capital Materials Testing, Inc. at 47.

**704**

did not file suit within two-year limitations period, and second suit was barred).

Finally, the plaintiff has submitted nothing which indicates the dismissal of Counts II and III should be reconsidered.

### V. CONCLUSION

Accordingly, the Court VACATES its Memorandum and Order of November 30, 1989 as to Count I.

The defendant's motion for summary judgment is GRANTED as to Count I and plaintiff's motion seeking a declaratory judgment favorably interpreting the coverage provisions of the insurance policy is DENIED. The Court also DENIES plaintiff's motion for partial reconsideration and correction of the Court's Memorandum and Order dated November 30, 1989.

It is So Ordered.