**PAWTUCKET MUTUAL INSURANCE COMPANY**

v.

**Barry GAY et al.**

**No. 2000–336–Appeal.**

Supreme Court of Rhode Island.

Dec. 28, 2001.

Kevin J. Holley, Providence, for plaintiff.

Lauren Jones, Providence, David A. Schrecter, for defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This appeal questions whether an insurer possessed the contractual right to elect to either repair its insured's damaged vehicle or to pay cash for its replacement value and keep the car. The defendants, Barry Gay (Gay) and Providence Auto Body (PAB), appeal from a Superior Court declaratory judgment entered in favor of the plaintiff, Pawtucket Mutual Insurance Company (PMIC). After a prebriefing conference, a single justice of this Court directed the parties to show cause why the issues raised in this appeal should not be summarily decided. Neither party has done so. We therefore decide the appeal at this time.

Because the policy provisions in question clearly allow the insurer to "keep all or part of the [stolen or damaged] property at an agreed or appraised value" and to limit its liability for any loss to the lesser of "the actual cash value of the stolen or damaged property" or "the amount necessary to repair or replace the damaged property," we conclude that the Superior Court correctly declared that the insurer was entitled to replace the damaged property by paying cash to its insured for the actual cash value of the damaged vehicle instead of paying just for the repair costs.

In 1993, Gay purchased a new Jeep Cherokee that PMIC insured for theft

loss. On October 7, 1993, Gay reported his vehicle stolen. Thereafter, it was recovered in a damaged condition. A representative of PMIC appraised the vehicle and determined it to be a constructive total loss. Consequently, PMIC offered Gay $27,400, which represented the actual cash value of the vehicle before the damage occurred, less a $500 deductible. Gay refused PMIC's offer, seeking instead to keep the car and to have PMIC pay $19,850 for the cost to repair the vehicle. As a result of Gay's refusal to accept the vehicle's actual cash value, PMIC filed this lawsuit seeking a declaratory judgment concerning its rights and liabilities under the policy in question. It also sought damages against defendant PAB for tortious interference with its contract with Gay, and indemnification from PAB for any liability it may have to Gay. Ultimately, the parties agreed that the PMIC's declaratory judgment action could be bifurcated from the other counts of its complaint and tried without a jury.

At the close of the evidence, the trial justice issued a bench decision. He examined the pertinent clauses of the insurance policy and determined that its terms were clear and unambiguous. He stated:

> "[T]he only fair reading that can be given to it allows [PMIC] sole and absolute option to repair or replace the vehicle subject to its being done so in a manner that puts Gay in substantially the same position he was in just prior to the loss. And the Court further concludes that based on [its] findings of fact, the decision of [PMIC] to elect to replace the vehicle was within its authority and that had Gay accepted the $27,400 he would have been placed in such a position."

Pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure, a final judgment entered declaring that PMIC possessed the sole and absolute option to repair or replace defendant's vehicle, provided that whichever option it exercised it placed the insured (Gay) in substantially the same position as he was in just prior to the loss. The judgment also declared that PMIC had exercised its option to replace the Gay vehicle when it offered him the actual cash value of the car before it was damaged, an amount which would have placed Gay in substantially the same position as he was in prior to his loss. Thereafter, Gay and PAB filed a timely notice of appeal.

■ Gay and PAB contend, on appeal, that the trial justice erred in finding that PMIC had the absolute right to either repair or replace the damaged vehicles of its insured by paying for its replacement value at the time of the loss. They suggest that the trial justice misinterpreted the policy provisions concerning repair or replacement.

■ On appeal, " '[t]his Court will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties.' " *General Accident Insurance Company of America v. American National Fireproofing, Inc.*, 716 A.2d 751, 755 (R.I.1998) (quoting *L.A. Ray Realty v. Town Council of Cumberland*, 698 A.2d 202, 207 (R.I. 1997) and *Harris v. Town of Lincoln*, 668 A.2d 321, 326 (R.I.1995)).

Here, the trial justice reviewed the evidence and concluded that PMIC's offer of the pre-loss replacement value for Gay's automobile was fair and reasonable. The evidence presented by both sides established that the $19,850 cost to repair the Gay vehicle approached 70 percent of its value, the industry standard used to determine whether a vehicle is repairable. He

also concluded that PMIC's offer to replace the vehicle by paying Gay for its actual cash value at the time of the loss would have placed Gay in substantially the same position that he was in before his loss. These factual findings, we hold, were neither erroneous nor were they based upon evidence that was either misconceived or overlooked.

 When interpreting the terms of an insurance policy, we construe them according to basic principles of contract law. *Textron, Inc. v. Aetna Casualty & Surety Co.*, 638 A.2d 537, 539 (R.I.1994) (citing *Malo v. Aetna Casualty and Surety Co.*, 459 A.2d 954, 956 (R.I.1983)).

> "The necessary prerequisite to this Court's departure from the literal language of a policy is a finding that the policy is ambiguous. In order to make such a determination of ambiguity, we read a policy in its entirety, giving words their plain, ordinary, and usual meaning. \*\*\* We do not engage in 'mental gymnastics \*\*\* to read ambiguity into a policy where none is present.' \*\*\* If, however, a policy's terms are ambiguous or capable of more than one reasonable meaning, the policy will be strictly construed in favor of the insured and against the insurer." *Sjogren v. Metropolitan Property & Casualty Insurance Co.*, 703 A.2d 608, 610 (R.I. 1997).

The pertinent policy provisions are contained in part D of the PMIC policy, which describes the coverage for a damaged auto. The section entitled "limit of liability" provides:

> "A. Our limit of liability for loss will be the lesser of the:
>
> "1. Actual cash value of the stolen or damaged property but not to exceed $35,000.

> "2. Amount necessary to repair or replace the property but not to exceed $35,000."

The policy also states in a subsequent section entitled "payment of loss" that:

> "We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:
>
> "1. You, or
>
> "2. The address shown in this policy.
>
> "If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value."

The above-quoted language is clear and unambiguous. The policy provides that the insurer has the option to pay its insured for the loss in money, to repair, or to replace the damaged property, or to return the stolen property to the insured and pay for any resulting damage. The policy language is clear that it is the insurer, not the insured, who has the right to elect one of these options. The insurer's liability for payment of the loss, however, is limited to the lesser of either the actual cash value of the stolen or damaged property or the amount necessary to repair or replace the property, neither of which shall exceed $35,000.

 The defendants' reliance on *Mason v. Tennessee Farmers Mutual Insurance Co.*, 640 S.W.2d 561 (Tenn.Ct.App.1982) in support of their assertion that the insurer does not have an absolute right to elect an option to repair or replace damaged property is misplaced. The *Mason* case clearly provides that the insurer possesses the option of how to address the insured's loss—not the insured. To be sure, the option to repair is not an absolute right if repairs would not substantially restore a vehicle to its fair-market value. In those

instances when repairs would not make the insured substantially whole, however, the only method available to the insurer would be to pay the insured for the loss amount equal to the fair-market value of the property when it was damaged or stolen.

In this case, however, the insurer PMIC had the option either to repair, to replace, or to pay for the loss in money—provided that Gay, its insured, was placed in substantially the same position as he was before the loss. The defendants have cited no authority supporting their assertion that PMIC could not elect to replace the damaged vehicle by paying the insured the actual cash value of the vehicle at the time of the loss. In fact, the cases cited by the defendants clearly support the trial justice's finding that it was the insurer's election whether to pay for the loss, repair the car, or replace the damaged property by paying for its actual cash value at the time of the loss.

We hold that the trial justice properly concluded that it was PMIC's contractual right to choose whether to pay for the costs of repairs or the replacement value of Gay's vehicle. For the above reasons, we deny and dismiss the defendants' appeal and affirm the judgment.